**UNITED STATES DISTRICT COURT**
**DISTRICT OF MAINE**

OXFORD CASINO HOTEL,
BB DEVELOPMENT, LLC, and
CHURCHILL DOWNS INCORPORATED,

Plaintiffs,

v.                                                            Case No. 1:26-cv-00046-LEW

MILTON F. CHAMPION, in his official
capacity as Executive Director of the Maine
Gambling Control Unit,

Defendant.

**ANSWER OF DEFENDANT MILTON F. CHAMPION**

Defendant Milton F. Champion, in his official capacity as Executive Director of the Maine

Gambling Unit, answers the First Amended Complaint, ECF No. 22, of Plaintiffs Oxford Casino

Hotel ("Oxford Casino"), BB Development, LLC, and Churchill Downs Incorporated ("Churchill

Downs") as follows:

**PRELIMINARY STATEMENT**

1.      Defendant admits that the Legislature passed "An Act to Create Economic

Opportunity for the Wabanaki Nations Through Internet Gaming," P.L. 2025, ch. 538 (enacting 8

M.R.S. §§ 1401-17) ["Chapter 538"], which act became law on January 11, 2026.[1]  Defendant also

admits that the quotations provided from the statutes cited are accurate.  Defendant denies the

remainder of the allegations in this paragraph.

---

[1] Chapter 538 will not become effective, however, until 90 days after the end of the Second Regular Session of the 132nd Maine Legislature.  *See* Me. Const. art. III, pt. 3, § 16.  The statutory adjournment date for the Second Regular Session is "the 3rd Wednesday in April," i.e., April 15, 2026.  3 M.R.S. § 2.

2. Defendant admits that the State of Maine regulates gaming within the State. Defendant also admits that Chapter 538 permits only a "federally recognized Indian nation, tribe or band in this State" to apply for an internet gaming license. 8 M.R.S. § 1406(2). Defendant denies the remainder of the allegations in this paragraph.

3. Defendant denies that Chapter 538 constitutes a race-based preference or classification. Defendant is without knowledge or information sufficient to form a belief as to the truth of the remainder of the allegations in this paragraph and therefore denies the same.

4. Denied.

5. Defendant admits that except for the word "interest," this paragraph includes accurate quotations from the case cited. Defendant otherwise denies the allegations in this paragraph.

6. Defendant admits that except for the alteration noted, this paragraph includes accurate quotations from the cases cited and otherwise denies the allegations in this paragraph.

7. Defendant denies that Chapter 538 is subject to strict scrutiny review and denies the other allegations in this paragraph.

8. Defendant admits that except for the alteration noted, this paragraph includes accurate quotations from the case cited. Defendant denies that Chapter 538 violates the dormant Commerce Clause and denies the other allegations in this paragraph.

9. Defendant admits that Plaintiffs are not eligible to apply for or otherwise receive an internet gaming license under Chapter 538. Defendant is without knowledge or information sufficient to form a belief as to the truth of the remainder of the allegations in this paragraph and therefore denies the same.

10. Defendant is without information sufficient to form a belief as to the truth of the allegations in this paragraph and therefore denies the same.

11.     Defendant admits that in 2025, Oxford paid $41,888,333.19 to the State pursuant to the statutory cascade in 8 M.R.S. §§ 1036(2-A), (2-B), and that Oxford Casino employs Maine citizens.  Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph and therefore denies the same.

12.     Denied.

## PARTIES

13.     Defendant admits that a casino has operated in the Town of Oxford, Maine, since 2012 and that Oxford Casino has been licensed to operate a casino in Maine since 2013.  Defendant denies the remainder of the allegations in this paragraph.

14.     Admitted.

15.     Defendant admits that Churchill Downs is a Kentucky corporation and that Churchill Downs is the parent corporation of Oxford Casino.  Defendant is without knowledge or information sufficient to form a belief as to the truth of the remainder allegations in this paragraph and therefore denies the same.

16.     Defendant admits that he is the Executive Director of the Maine Gambling Control Unit; that he has been sued in his official capacity and that he is charged with administering and enforcing Chapter 538.  Defendant also admits that he is responsible for evaluating applications for internet gaming licenses under Chapter 538.  Defendant otherwise denies the remainder of the allegations in this paragraph.

## JURISDICTION AND VENUE

17.     Defendant admits that Plaintiffs assert causes of action under 42 U.S.C. § 1983 and the Declaratory Judgment Act and that Plaintiffs' Amended Complaint implicates federal question jurisdiction.  Defendant otherwise denies the allegations in this paragraph.

18.     Admitted.

## FACTUAL ALLEGATIONS

### I.      Oxford Casino's Operation

19.     Defendant admits that Oxford Casino is one of two licensed casinos operating in the State of Maine and that Oxford Casino has been licensed to operate a casino in Maine since 2013.  Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph and therefore denies the same.

20.     Defendant admits that as of March 22, 2026, Oxford Casino reported it had 955 slot-machines operational on its casino floor.  Defendant also admits that Maine law defines "slot machine" as

> any mechanical, electrical or electronic device, contrivance or machine or other device, contrivance or machine that is available to play upon insertion of money or a token, credit or similar object or thing of value, the play of which by the element of chance may deliver or entitle the person playing the device, contrivance or machine to receive cash, tokens or credits to be exchanged for cash, merchandise or anything of value, whether the payoff is made automatically from the device, contrivance or machine or in any other manner, and includes progressive electronic gaming devices with a payoff that increases as the electronic gaming device is played.

8 M.R.S. § 1001(39).  Defendant is without knowledge or information sufficient to form a belief as to the truth of the remainder of the allegations in this paragraph and therefore denies the same.

21.     Defendant admits that as of March 22, 2026, Oxford Casino reported it had 22 table games operational on its casino floor.  Defendant also admits that Maine law defines table game as "a card game, dice game or other game of chance, including, but not limited to, blackjack, poker, dice, craps, roulette, baccarat, money wheels, wheel of fortune or an electronic table game located in a casino."  8 M.R.S. § 1001(43-A).  Defendant is without knowledge or information sufficient to form a belief as to the truth of the remainder of the allegations in this paragraph and therefore denies the same.

22.     Admitted.

4

23. Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph and therefore denies the same.

24. Defendant admits that Churchill Downs acquired Oxford Casino in 2013. Defendant is without knowledge or information sufficient to form a belief as to the truth of the remainder of the allegations in this paragraph and therefore denies the same.

25. Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph and therefore denies the same.

26. Defendant admits that Maine law requires a casino operator to "collect and distribute 46% of the net slot machine income from slot machines operated by the casino operator to the [Maine Gambling Control B]oard for distribution" and "collect and distribute 16% of the net table game income from table games operated by the casino operator to the [Maine Gambling Control B]oard for distribution." 8 M.R.S.§§ 1036(2-A), (2-B). Defendant also admits that in 2025, Oxford paid $41,888,333.19 to the State pursuant to the statutory cascade in 8 M.R.S. §§ 1036(2-A), (2-B). Defendant is without knowledge or information sufficient to form a belief as to the truth of the remainder of the allegations in this paragraph and therefore denies the same.

27. Defendant admits that amounts paid by Oxford Casino in accordance with 8 M.R.S. § 1036 are allocated to the Penobscot Nation, the Passamaquoddy Tribe, and the identified Maine governmental units, institutions, and programs. Defendant is without knowledge or information sufficient to form a belief as to the truth of the remainder of the allegations in this paragraph and therefore denies the same.

## II.    Tribal Status in Maine.

28. Defendant admits that the State of Maine's relationship with the four federally-recognized Indian tribes in Maine is "unique." *See Passamaquoddy Tribe v. Maine*, 75 F.3d 784, 787 (1st Cir. 1996). Defendant also admits that the Aroostook Band of Micmacs Settlement Act

(ABMSA), Pub. L. No. 102-171, 105 Stat. 1143 (1991) (formerly codified at 25 U.S.C. § 1721 note), provides: "APPLICATION OF FEDERAL LAW.—For the purposes of application of Federal law, the Band and its lands shall have the same status as other tribes and their lands accorded Federal recognition under the terms of the Maine Indian Claims Settlement Act of 1980." ABMSA § 6(b).  However, Defendant denies that federal law and regulations applicable to federally recognized tribes and their members generally do not apply within the State of Maine. The Maine Indian Claims Settlement Act of 1980 (MICSA), Pub. L. No. 96-420, 94 Stat. 1785 (1980) (codified at 25 U.S.C. §§ 1721-35),[2] provides the opposite.  Defendant admits that MICSA, in pertinent part, provides:

> Except as other wise provided in this subchapter, <u>the laws and regulations of the United States which are generally applicable to Indians, Indian nations, or tribes or bands of Indians or to lands owned by or held in trust for Indians, Indian nations, or tribes or bands of Indians shall be applicable in the State of Maine</u>, except that no law or regulation of the United States (1) which accords or relates to a special status or right of or to any Indian, Indian nation, tribe or band of Indians, Indian lands, Indian reservations, Indian country, Indian territory or land held in trust for Indians, and also (2) which affects or preempts the civil, criminal, or regulatory jurisdiction of the State of Maine, including, without limitation, laws of the State relating to land use or environmental matters, shall apply within the State.

25 U.S.C. § 1725(h) (emphasis added).  Defendant also admits that MICSA further provides:

> The provisions of any Federal law enacted after October 10, 1980, for the benefit of Indians, Indian nations, or tribes or bands of Indians, which would affect or preempt the application of the laws of the State of Maine, including application of the laws of the State to lands owned by or held in trust for Indians, or Indian nations, tribes, or bands of Indians, as provided in this subchapter and the Maine Implementing Act, shall not apply within the State of Maine, unless such provision of such subsequently enacted Federal law is specifically made applicable within the State of Maine.

25 U.S.C. § 1735(b).  Defendant denies the remainder of the allegations in this paragraph.

---

[2] Although still in effect, MICSA and other settlement statutes are omitted from printed versions of Title 25 of the United States Code.

29.    Defendant admits that the named tribal nations are located in the State of Maine and are known as the Wabanaki Nations.  Defendant denies the remainder of the allegations in this paragraph.

30.    Defendant admits that: MICSA represents "a fair and just settlement of [the] land claims" of the "the Passamaquoddy Tribe, the Penobscot Nation, and the Houlton Band of Maliseet Indians," MICSA § 1721(a)(7); the purposes of MICSA are enumerated in § 1721(b); and the purposes of ABMSA are provided in § 2(b) of that act.  Defendant also admits that the language quoted in this paragraph, respectively, accurately reflects: the title of the bill that resulted in the enactment of MICSA, *see* S. 2829 (96th Cong.) (1980); the title of the bill that resulted in the enactment of ABMSA, *see* S. 374 (102nd Cong.) (1991); and section 6(b) of ABMSA.  Defendant otherwise denies the allegations in this paragraph and denies them to the extent they suggest that the sole purpose of MICSA and ABMSA was to settle land claims or that Congress enacted these laws without the agreement and support of the State of Maine or the Wabanaki Nations.

31.    Defendant admits that MICSA resolved all current and potential land claims by the Penobscot Nation, the Passamaquoddy Tribe, the Houlton Band of Maliseet Indians, and all other tribes in the State of Maine.  MICSA §§ 1723(a)(1), (b)-(c).  Defendant admits that MICSA and ABMSA established land acquisition funds for each of the Wabanaki Nations.  MICSA § 1724(d); ABMSA § 4.  Defendant admits that sections 1725(h) and 1735(b) of MICSA, which are quoted above, control the application of federal laws and regulations enacted for the benefit of Indians, Indian nations, or tribes or bands of Indians within the State of Maine.  Defendant denies the remainder of the allegations in this paragraph.

32.    Defendant admits that in April of 1980 the Maine Legislature enacted "AN ACT to Implement the Maine Indian Claims Settlement," (MIA), P.L. 1979, ch. 732, § 1 (codified at 30 M.R.S. §§ 6201-14).  Defendant denies that MIA was enacted to implement MICSA, which was

enacted by Congress 6 months later—on October 10, 1980. *See* 94 Stat. at 1785; *see also* MICSA § 1721(b)(3) (stating one purposes of MICSA was "to ratify the Maine Implementing Act, which defines the relationship between the State of Maine and the Passamaquoddy Tribe, and the Penobscot Nation"). Defendant admits that MIA provides:

> Except as otherwise provided in this Act, all Indians, Indian nations, and tribes and bands of Indians in the State and any lands or other natural resources owned by them, held in trust for them by the United States or by any other person or entity shall be subject to the laws of the State and to the civil and criminal jurisdiction of the courts of the State to the same extent as any other person or lands or other natural resources therein.

MIA § 6204. Defendant also admits that the Mi'kmaq Nation Restoration Act (MNRA), 30 M.R.S. §§ 7201-7210,[3] provides:

> Except as otherwise provided in this Act, the Mi'kmaq Nation and all members of the Mi'kmaq Nation in the State and any lands or other natural resources owned by them or held in trust for them by the United States or by any other person or entity are subject to the laws of the State and to the civil and criminal jurisdiction of the courts of the State to the same extent as any other person or lands or other natural resources in the State.

MNRA § 7204. Defendant denies the remainder of the allegations in this paragraph.

33.	Defendant admits that the Indian Gaming Regulatory Act (IGRA) was enacted by Congress in 1988 and that IGRA currently does not apply within the State of Maine. Defendant denies the remainder of the allegations in this paragraph.

34.	Denied. Section 6208(3) of MIA addresses taxation; it does not address gaming or the sovereign status of the Wabanaki Nations for purposes of gaming.

## III.	Chapter 538

35.	Defendant denies that Chapter 538 is or establishes a monopoly, but admits the remainder of the allegations in this paragraph.

---

[3] In 2023, the State and the Mi'kmaq Nation agreed to amend the Micmac Settlement Act. P.L. 2023, ch. 369, Pt. A, §§ 2, 5. The revised act has been renamed the Mi'kmaq Nation Restoration Act. 30 M.R.S. § 7201.

36. The Department admits that Chapter 538 legalizes "the operation of Internet gaming" by licensed entities. Defendant denies the remainder of the allegations in this paragraph.

37. Admitted.

38. Admitted.

39. Admitted

40. Defendant admits that only a "federally recognized Indian nation, tribe or band located in this State" is permitted to apply for an internet gaming license under Chapter 538, 8 M.R.S. § 1406(2), but denies the remainder of the allegations in this paragraph.

41. Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph and therefore denies the same.

42. Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph and therefore denies the same.

## IV. Alleged Injury to Plaintiffs

43. Defendant denies that Chapter 538 is unconstitutional. Defendant is without knowledge or information sufficient to form a belief as to the truth of the remainder of the allegations in this paragraph and therefore denies the same.

44. Defendant admits that Oxford Casino (through BB Development, LLC) operates a brick-and-mortar casino that offers in-person gaming. Defendant is without knowledge or information sufficient to form a belief as to the truth of the remainder of the allegations in this paragraph and therefore denies the same.

45. Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph and therefore denies the same.

46. Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph and therefore denies the same.

47. Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph and therefore denies the same.

48. Defendant admits the quotations from the cited case are accurate. Defendant is without knowledge or information sufficient to form a belief as to the truth of the remainder of the allegations in this paragraph and therefore denies the same.

49. Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph and therefore denies the same.

50. Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph and therefore denies the same.

## COUNT ONE

**42 U.S.C. § 1983, Equity, Declaratory Judgment Act**
**(Violation of Equal Protection, U.S. Const. Amend. XIV)**

51. Defendant realleges and incorporates by reference his responses to the allegations in all of the preceding paragraphs numbered 1-50.

52. Defendant admits that 42 U.S.C. § 1983 provides a cause of action and that declaratory and injunctive relief are available remedies under Section 1983, but otherwise denies the allegations in this paragraph.

53. Defendant admits that injunctive and declaratory relief can be available remedies pursuant to a valid common law or statutory cause of action, but otherwise denies the allegations in this paragraph.

54. Admitted.

55. Denied.

56.    Defendant admits that Plaintiffs are not eligible to apply for or otherwise receive an internet gaming license under Chapter 538.  Defendant denies the remainder of the allegations in this paragraph.

57.    Defendant admits that Plaintiffs are not eligible to apply for or otherwise receive an internet gaming license under Chapter 538.  Defendant denies the remainder of the allegations in this paragraph.

58.    Defendant denies that Plaintiffs are entitled to any declarative relief.

59.    Defendant denies that Chapter 538 violates the Equal Protection Clause of the United States Constitution and denies that Plaintiffs are entitled to any relief.

60.    Defendant denies that Plaintiffs are entitled to any injunctive relief.

61.    Defendant denies that Plaintiffs are entitled to any attorneys' fees.

## COUNT TWO

### 42 U.S.C. § 1983, Equity, Declaratory Judgment Act
### (Violation of the Commerce Clause, U.S. Const. Art. I, § 8, cl. 3)

62.    Defendant realleges and incorporates by reference his responses to the allegations in all of the preceding paragraphs numbered 1-61.

63.    Defendant admits that 42 U.S.C. § 1983 provides a cause of action and that declaratory and injunctive relief are available remedies under Section 1983, but otherwise denies the allegations in this paragraph.

64.    Defendant admits that injunctive and declaratory relief can be available remedies pursuant to a valid common law or statutory cause of action, but otherwise denies the allegations in this paragraph.

65.    Admitted.

66.    Denied.

11

67.     Defendant admits that Plaintiffs are not eligible to apply for or otherwise receive an internet gaming license under Chapter 538.  Defendant denies the remainder of the allegations in this paragraph.

68.     Defendant admits that Plaintiffs are not eligible to apply for or otherwise receive an internet gaming license under Chapter 538.  Defendant denies the remainder of the allegations in this paragraph.

69.     Defendant denies that Plaintiffs are entitled to any declarative relief.

70.     Defendant denies that Chapter 538 violates the Dormant Commerce Clause of the United States Constitution and denies that Plaintiffs are entitled to any relief.

71.     Defendant denies that Plaintiffs are entitled to any injunctive relief.

72.     Defendant denies that Plaintiffs are entitled to any attorneys' fees.

## PRAYER FOR RELIEF

73.     Defendant denies that Plaintiffs are entitled to judgment against Defendant or any of the relief sought in items numbered (a) through (e).

## AFFIRMATIVE DEFENSES

1.     The Amended Complaint fails to state a claim upon which relief can be granted.

2.     One or more Plaintiffs lack standing to bring one or more of the claims asserted in the Amended Complaint.

DATED:  March 30, 2026                    Respectfully submitted,

                                                         AARON M. FREY
Attorney General, State of Maine

/s/ Kimberly L. Patwardhan
KIMBERLY L. PATWARDHAN
Assistant Attorney General

Office of the Maine Attorney General
6 State House Station
Augusta ME  04333-0006
Tel.  (207) 626-8570
Fax (207) 287-3145
kimberly.patwardhan@maine.gov

## CERTIFICATE OF SERVICE

I hereby certify that on March 30, 2026, I electronically filed this document and any attachments with the Clerk of the Court using the CM/ECF system, and that the same will be sent electronically to registered participants as identified in the CM/ECF electronic filing system for this matter.


DATED:  March 30, 2026                    /s/ Kimberly L. Patwardhan
                                          KIMBERLY L. PATWARDHAN
                                          Assistant Attorney General
                                          Office of the Attorney General
                                          6 State House Station
                                          Augusta ME  04333-0006
                                          Tel.  (207) 626-8570
                                          Fax (207) 287-3145
                                          kimberly.patwardhan@maine.gov

14