## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MAINE

OXFORD CASINO HOTEL, *et al.*,

*Plaintiffs*,

v.

MILTON F. CHAMPION, in his official capacity as Executive Director of the Maine Gambling Control Unit,

*Defendant*,

v.

HOULTON BAND OF MALISEET INDIANS, MI'KMAQ NATION, PASSAMAQUODDY TRIBE, and PENOBSCOT NATION,

*Proposed Intervenor-Defendants*.

Civil Action No.: 1:26-CV-00046-LEW

---

### PROPOSED INTERVENORS THE WABANAKI NATIONS' UNOPPOSED MOTION TO INTERVENE

The Houlton Band of Maliseet Indians, the Mi'kmaq Nation, the Passamaquoddy Tribe, and the Penobscot Nation (collectively, the "Wabanaki Nations" or "Nations") move to intervene in this case as party defendants. The Nations are entitled to intervene as of right in this suit under Federal Rule of Civil Procedure 24(a). Alternatively, permissive intervention is warranted under Federal Rule of Civil Procedure 24(b). This Motion is supported by the incorporated Memorandum of Law and declarations in support thereof, and accompanied by the Nations' Proposed Answer.

Counsel for the Nations has conferred with counsel for the existing parties. Defendant Champion (the "State") takes no position on this motion. Plaintiffs do not oppose the Nations' intervention if it is subject to the following conditions, which the Nations have agreed to: (1) The

1

Nations consent to the proposed case schedule that the existing parties have submitted to the Court on the same day as this motion. (2) The Nations will not seek dismissal pursuant to Federal Rules of Civil Procedure 12(b)(7) and 19. (3) The Nations will not introduce new claims into this suit, and Plaintiffs likewise will not assert claims against the Nations. (4) If discovery proceeds, the Nations and Plaintiffs will presumptively limit written discovery requests to each other to half of what is allowed under the Federal Rules, but additional written discovery requests may be permitted upon a showing of good cause.

<u>**MEMORANDUM OF LAW IN SUPPORT OF MOTION TO INTERVENE**</u>

### I.    INTRODUCTION

This case concerns a constitutional attack on a Maine statute that establishes regulatory parameters pursuant to which the four Wabanaki Nations may seek to obtain licenses to offer internet gambling ("iGaming") within the State of Maine. *See* An Act to Create Economic Opportunity for the Wabanaki Nations Through Internet Gaming, P.L. 2025, ch. 538, *codified at* 8 M.R.S.A. §§ 1401-1417 (hereinafter "Economic Opportunity Act" or "Act"). The Nations seek intervention to protect their rights under the Act, which support their sovereignty and self-determination through economic development.

The Nations satisfy each of the relevant criteria for intervention as of right under Federal Rule of Civil Procedure 24(a)(2). First, their motion to intervene is filed at the earliest stage of this litigation. Second, they have distinct interests in this suit because they are the direct beneficiaries of the Act; because this suit targets the Nations' ability to generate revenues needed to effectively deliver tribal governmental services to their citizens; because the Act is the product of the Nations' advocacy; and because Plaintiffs assert equal protection arguments that challenge the Nations' unique political and sovereign status. Third, the relief Plaintiffs seek would directly impair these

interests. Fourth, the State does not adequately represent the Nations' unique sovereign and economic interests.

The Nations also satisfy the criteria for permissive intervention. Their motion is timely. They will raise defenses concerning their unique political and sovereign status that share common questions with the main action. And they will contribute significantly to the development of the underlying legal and factual issues in this case. Intervention is therefore warranted.

## II.    BACKGROUND

The Wabanaki Nations are the four federally recognized Indian tribes located in the present-day State of Maine. *See* 91 Fed. Reg. 4102, 4104 (Jan. 30, 2026). They have resided in these lands since time immemorial. Declaration of Chief Sabattis at ¶ 2; Declaration of Chief McCormack at ¶ 2; Declaration of Chief Bassett at ¶ 2; Declaration of Chief Francis at ¶ 2; *see* Pub. L. 96-420, 94 Stat. 1787, § 2(a)(3)-(5) (1980) (finding the Penobscot Nation, Passamaquoddy Tribe, and Houlton Band of Maliseet Indians are the "sole successor[s] in interest . . . to aboriginal entit[ies]" which "claimed aboriginal title to certain lands in the State of Maine"); P.L. 102-171, 105 Stat. 1143, § 2(a)(1) (1991) (similar findings as to the Mi'kmaq Nation). The unique relationship and jurisdictional balance between the United States, Maine, and the respective Nations is set forth in federal and state laws, including the Maine Indian Claims Settlement Act, Pub. L. 96-420, the Houlton Band of Maliseet Indian Supplementary Claims Settlement Act, Pub. L. 99-566, the Aroostook Band of Micmacs Settlement Act, Pub. L. 102-171, the Maine Implementing Act, P.L. 1979, ch. 732, and the Mi'kmaq Restoration Act, P.L. 2023, ch. 369. Economic revenues generated by the Nations support core governmental functions and services for Wabanaki citizens and families, such as housing, education, public safety, and healthcare, as well as community-wide

investments to improve socioeconomic conditions across Maine. *E.g.*, Declaration of Chief Sabattis at ¶¶ 3-5; Declaration of Chief Francis at ¶¶ 3-9.

This suit concerns the Economic Opportunity Act, which authorizes the Nations to seek Internet gaming licenses to operate iGaming in Maine, subject to regulation by the Maine Gambling Control Unit. *See* 8 M.R.S.A. §§ 1403, 1406. The Legislature authorized tribal iGaming to provide a path to economic sovereignty for the Nations through generation of tribal revenues that will provide for the health, welfare, and safety of Wabanaki citizens and surrounding communities, as well as revenue for Maine veterans' homes, opioid use prevention and treatment, emergency housing, and other dedicated public purposes. *See* 8 M.R.S.A. § 1416.

Despite bipartisan support, some State agencies raised objections to the Act. The Maine Department of Health and Human Services ("DHHS") testified in opposition to the Act and, after the Act's passage, the Department of Public Safety's Gambling Control Board ("GCB") recommended a veto to Governor Mills.[1] On January 8, 2026, Governor Janet Mills announced her intention to allow the Economic Opportunity Act to become law without her veto or signature.[2]

On January 23, 2026, Plaintiffs filed this action seeking to invalidate the Act. ECF No. 1. Plaintiffs contend that the Act violates the Equal Protection Clause of the Fourteenth Amendment and the Dormant Commerce Clause. ECF No. 22 at 12-15. They seek, among other things, declaratory and injunctive relief including declarations that the Act is unconstitutional. ECF No. 22 at 15.

---

[1] Testimony of Puthiery Va, DO, Director, Maine Center for Disease Control and Prevention, Maine Department of Health and Human Services, before the Veterans and Legal Affairs Committee (March 31, 2025); Letter from GCB Board Chairman Steven J. Silver to Governor Janet T. Mills (Dec. 17, 2025) [hereinafter Silver Letter].

[2] Office of Governor Janet T. Mills, *Governor Mills Announces Bill to Create Economic Opportunities for the Wabanaki Nations to Become Law* (Jan. 8, 2026), https://www.maine.gov/governor/mills/news/governor-mills-announces-bill-create-economic-opportunities-wabanaki-nations-become-law-2026.

### III.   ARGUMENT

Under Federal Rule of Civil Procedure 24(a)(2), the Nations are entitled to intervene in this suit that seeks to invalidate a statute of vital importance to their unique economic and sovereign interests. Alternatively, permissive intervention is warranted under Federal Rule of Civil Procedure 24(b)(1)(B). Each basis for intervention is addressed in turn.

#### A.  The Nations Are Entitled To Intervene As Of Right.

The Nations have a right to intervene under Rule 24(a)(2). Courts must permit intervention as of right when a movant demonstrates (1) the "timeliness" of its motion; (2) "a concrete interest in the pending action"; (3) a "realistic threat that resolution of the pending action will hinder" its ability to "effectuate that interest"; and (4) "the absence of adequate representation by any existing party." *T-Mobile Ne. LLC v. Town of Barnstable*, 969 F.3d 33, 39 (1st Cir. 2020) (cleaned up). The Nations satisfy each requirement.

#### 1.   *The Nations' Motion Is Timely.*

First, the Nations' motion to intervene is timely. This Court has yet to reach any procedural or substantive issues in this case. Plaintiffs filed their amended complaint just over two weeks ago, and the State answered only two days ago. The Nations have also coordinated with Plaintiffs and the State to reach agreement on a proposed case schedule that will work for all parties, and that proposed case schedule is being presented to the Court on the same day as this motion. Because the Nations have moved to intervene at the very earliest stage of this case, their motion to intervene is timely. *See, e.g.*, *Pedersen v. Pure Mech., LLC*, No. 24-cv-38-pp, 2024 WL 1886743, at *5 (E.D. Wis. Apr. 30, 2024) (determining that motion to intervene was timely when filed within one week of answer).

### 2. *The Nations Have Concrete Legal Interests At Stake.*

Turning to the second factor, the Nations have an "interest relating to the … subject of th[is] action" because they have a "direct" and "sufficiently close relationship to th[is] dispute." *Travelers Indem. Co. v. Dingwell*, 884 F.2d 629, 638 (1st Cir. 1989) (cleaned up). To start, the Nations are the "direct and intended beneficiaries" of the Act, as it limits eligibility for Internet gaming licenses to the four federally recognized tribes within the State. *Verizon New England v. Maine Pub. Utils. Comm'n*, 229 F.R.D. 335, 337 (D. Me. 2005); *see* 8 M.R.S.A. § 1406. That alone satisfies this second factor. *See Verizon New England*, 229 F.R.D. at 337 (finding legal interest prong satisfied where movants were primary beneficiaries of a "regulatory scheme designed to allow" their economic competition with plaintiff and access to plaintiff's network).

Oxford's suit also "implicates the [Nations'] legally protected economic and sovereign interests." *Maverick Gaming LLC v. United States*, 123 F.4th 960, 972 (9th Cir. 2024), *cert. denied. sub nom. RunItOneTime LLC v. United States*, 146 S. Ct. 98 (2025). Here, the iGaming revenues will go toward government programs and functions that directly benefit Wabanaki citizens, such as housing, medical care, education, and other public service programs. *E.g.*, Declaration of Chief McCormack at ¶ 5; Declaration of Chief Bassett at ¶ 5. The Nations thus possess substantial economic and governmental interests in the Act.

The Nations also have a cognizable interest in this suit because they advocated for the Act through the legislative process. The Act represents a culmination of the Nations' efforts to establish long-term security and stability for tribal government programs. Declaration of Chief Sabattis at ¶ 7; Declaration of Chief McCormack at ¶ 6; Declaration of Chief Bassett at ¶ 6; Declaration of Chief Francis at ¶ 11. The Nations' "interest in the 'transaction' now before the Court is" therefore "well established." *Dist. 4 Lodge of the Int'l Ass'n of Machinists & Aerospace Workers, Loc. Lodge*

6

*207 v. Raimondo*, No. 1:21-cv-00275-LEW, 2021 WL 4616231, at *1 (D. Me. Oct. 6, 2021) (finding that movants had a qualifying interest in challenge to rule that was "the product of litigation and rule-making proceedings in which Movants ha[d] long been engaged").

Finally, the Nations have a direct and unique interest in the resolution of Plaintiffs' equal protection arguments. *See Int'l Paper Co. v. Inhabitants of Town of Jay*, 887 F.2d 338, 344-45 (1st Cir. 1989) (precedential effect of court's ruling may implicate the interest of a movant-intervenor). Plaintiffs allege the Act violates equal protection because it treats the Nations differently based on race. ECF No. 22 at 12-13. Such arguments, which are legally and factually erroneous, directly target the Nations' unique constitutional and political status. *See, e.g.*, *Morton v. Mancari*, 417 U.S. 535, 551-55 (1974); *Washington v. Confederated Bands & Tribes of Yakima Indian Nation,* 439 U.S. 463, 500-02 (1979). The Nations accordingly have a concrete interest in this suit.

### 3.    *The Nations' Interests Would Be Impaired By This Litigation.*

As to the third factor, a ruling in Plaintiffs' favor would, as a practical matter, impair and impede the Nations' interests. *See Daggett v. Comm'n on Gov't'l Ethics & Election Pracs.*, 172 F.3d 104, 110 (1st Cir. 1999) (holding that the "practical test" of adverse effect may be "easily satisfied" where movants would be adversely impacted by an injunction against "implementation of [a] statute" (cleaned up)). If Plaintiffs prevailed on their claims, it would eliminate the Nations' ability to secure iGaming licenses and offer iGaming under the Act. That, in turn, would foreclose the generation of tribal revenues needed to support core tribal governmental services. Moreover, a decision invalidating the Act would negate the Nations' efforts to secure the law's passage. Finally, adopting Plaintiffs' equal protection theories could threaten the validity of countless laws that classify based on the unique sovereign status of federally recognized tribes. Given these outcomes,

7

"the Court's imposition of the requested … relief would impair [the Nations'] interest[s]." *Dist. 4 Lodge*, 2021 WL 4616231, at *1.

### 4. *The Existing Parties Do Not Adequately Represent The Nations' Interests.*

As to the fourth and last factor, the State does not adequately represent the Nations' interests in this case. In a challenge to a state law, there is a presumption that the state is an adequate representative. *See Maine v. Dir., U.S. Fish & Wildlife Serv.*, 262 F.3d 13, 19 (1st Cir. 2001). But a "'[p]resumption' means no more in this context than calling for an adequate explanation as to why what is assumed—here, adequate representation—is not so." *Id.* The Nations have rebutted the presumption here.

*First*, the State is an inadequate representative because it does not share the Nations' unique sovereign and economic interests in their ability to pursue gaming operations. *See Maverick Gaming*, 123 F.4th at 974-76. The State's interest is limited to its public health and regulatory priorities in upholding the Act in its role as licensor of the Nations' iGaming enterprises. "[I]t does not share an interest in the *outcome*" of the Act being upheld—the "operation of … tribal [iGaming]." *Id.* at 974-75 (emphasis in original). Indeed, in the past Maine has strongly opposed the Wabanaki Nations' efforts to engage in gaming activities. *See, e.g.*, *Passamaquoddy Tribe v. Maine*, 75 F.3d 784 (1st Cir. 1996). Thus, while the State's "'interests in this litigation begin and end with' defending the [Act], 'for the [Nations], the stakes of this litigation extend beyond the fate of the [Act] and implicate [their] sovereign interests in self-governance.'" *Maverick Gaming*, 123 F.4th at 975 (quoting *Deschutes River All. v. Portland Gen. Elec. Co.*, 1 F.4th 1153, 1163 (9th Cir. 2021)). Because the State "do[es] not share the [Nations'] sovereign and economic interests in … furthering [their] … gaming operations," the Nations are entitled to intervene as of right. *Id.* at 976.

*Second*, the State is an inadequate representative because it does not share the Nations' interests in their political and sovereign status for purposes of equal protection. Plaintiffs' equal protection arguments could undo countless Maine laws that are essential to the Nations' very ability to persist as separate, self-governing peoples. The State does not and cannot adequately represent this existential interest.

*Third*, the State is an inadequate representative because the Economic Opportunity Act is controversial. During the legislative process, DHHS publicly opposed the Act. *Supra* at 4. And following the bill's passage in the Legislature, the GCB formally recommended a veto to Governor Mills, stating its view that Plaintiffs—and the company with which they share a monopoly on brick-and-mortar casino gambling—should also be eligible for iGaming licenses. Silver Letter at 1 ("Cutting out Oxford and Hollywood Casinos entirely from offering iGaming is ill-advised…."). Moreover, Governor Mills did not offer her express endorsement of the Act by signature but instead permitted the Act to become law through inaction, which calls into question the ardor with which the State will defend the Act. The Act is therefore "controversial, controversy has a tendency to soften the backbone of the political classes, and litigation has some tendency to produce negotiated resolutions not entirely in keeping with the letter of the law." *Dist. 4 Lodge*, 2021 WL 4616231, at *1. "Given these realities," the State cannot adequately represent the Nations' interests. *Id.* (movants likely demonstrated inadequate representation because of controversy surrounding rule); *see also, e.g.*, *Animal Prot. Inst. v. Martin*, 241 F.R.D. 66, 70 (D. Me. 2007) (granting intervention as-of-right where "weigh[ing] countervailing factors" could cause state to "shirk" a robust merits defense (cleaned up)).

9

**B. Alternatively, The Nations Should Be Permitted To Intervene Under Rule 24(b).**

In the alternative, the Nations request permissive intervention under Federal Rule of Civil Procedure 24(b), which provides that

> [o]n timely motion, the court may permit anyone to intervene who[] ... has a claim or defense that shares with the main action a common question of law or fact.... In exercising its discretion, the court must consider whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties' rights.

The United States Supreme Court has held, in granting permissive intervention, that Indian tribes' participation in litigation "critical to their welfare should not be discouraged." *Arizona v. California*, 460 U.S. 605, 615 (1983). In addition, where a movant-intervenor "seek[s] to intervene to defend the constitutionality of [an] Act, … they clearly have a defense that shares with the main action a common question of law or fact." *Dinner Table Action v. Schneider*, No. 1:24-CV-00430-KFW, 2025 WL 604885, at *2 (D. Me. Feb. 25, 2025) (cleaned up) (granting permissive intervention to non-governmental party seeking to defend constitutionality of state law alongside defendant state officials).

These considerations support the Nations' intervention here. First, as discussed above, the Nations' motion is timely and will not prejudice the adjudication of any party's rights. *Supra* at 5. Second, the Nations intend to raise defenses concerning their sovereign status and interests that share common questions of law and fact with the "main action." Fed. R. Civ. P. 24(b)(1)(B); *see supra* at 6-9. Finally, given the Nations' advocacy for the Act, the Nations will contribute significantly to the development of the underlying legal and factual issues in this case.

**IV.    CONCLUSION**

The Court should grant the Nations' motion to intervene.

Respectfully submitted this 1st day of April, 2026.


/s/ *Melissa Hewey*

Leonard R. Powell\*                    Melissa Hewey
Morgan E. Saunders\*                 DRUMMOND WOODSUM
NATIVE AMERICAN RIGHTS FUND        84 Marginal Way, Suite 600
950 F Street, NW, Suite 1050         Portland, ME 04101
Washington, D.C. 20004               Phone: (207) 253-0528
(202) 785-4166                       mhewey@dwmlaw.com
powell@narf.org
saunders@narf.org

Matthew Campbell\*
Allison Neswood\*
NATIVE AMERICAN RIGHTS FUND
250 Arapahoe Ave.
Boulder, CO 80302
(303) 447-8760
mcampbell@narf.org
neswood@narf.org

\**Pro hac vice applications forthcoming*

*Counsel for Proposed Intervenor-Defendants*